## ISENHOUR v. BARTON COUNTY, Appellant.

### In Banc, June 28, 1905.

1. **COUNTY WARRANTS: Assignment.** County warrants, issued inaccordance with the statute, are mere creatures of the statute are merely evidences of indebtedness, are non-negotiable, and the Legislature had the power to prohibit their payment unless presented for payment to the treasurer of the county issuing them by the person in whose favor drawn or by his assignee, executor or administrator. The Legislature also had the authority to provide that such warrants shall be assignable, to prescribe the form thereof, and to provide that "no blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same."

2. ————: ————: **Interest.** The county is not liable for interest on warrants assigned in blank and in that condition presented by the holder to the treasurer for payment. (**Brace, C. J., Marshall and Fox, JJ.,** dissenting.)

3. ————: ————: ————: **Statute: Liability of Treasurer.** The statute provides that "no county treasurer in this State shall pay any warrant drawn on him unless such warrant be presented for payment by the person in whose favor it is drawn or by his assignee, executor or administrator; and when presented for payment, if there be no money in the treasury for that purpose, the treasurer shall so certify on the back of the warrant, and shall date and subscribe the same;" and that "all warrants shall be assignable, and every assignment shall be in the following form: For value received, I assign the within warrant to A B, this ———— day of ————. (Signed) C D;" and that "no blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same." The warrant in suit was issued on February 8th to Livingston, and contained the blank form prescribed by the statute, and he attempted to assign it to plaintiff by simply writing his name under the blank form, not filling out the blank spaces, and in that condition it was presented to the treasurer by plaintiff on February 11th, and on the back thereof the county treasurer wrote: "The within warrant presented for payment, and no money in the county treasury for that purpose, this 11th day of February, 1898," and signed his name and official title. *Held,* that, the assignment being in blank, the plaintiff was not its assignee, the legal title still being in the payee, Livingston, and the plaintiff is not entitled to interest thereon. *Held,* also, that the indorsement thereon by the county treasurer was an express violation of the statute, and under another statute providing that "any county treasurer violating any provisions of this article shall be guilty of a misdemeanor, and shall, on conviction, be punished," etc., he was

guilty of a misdemeanor, and hence his indorsement could not in the remotest degree affect the rights of the plaintiff or of the county. *Held,* also, that the action is one at law, as distinguished from a suit in equity.

*Held,* by **Marshall, J.,** in a dissenting opinion, in which **Brace, C. J.,** and **Fox, J.,** concur. that the warrant drew interest from the date of its presentation to the county treasurer, recoverable by the plaintiff; that after plaintiff bought the warrant from Livingston and paid for it, he became the equitable owner, that he thereafter had the right to use the name of the assignor in demanding payment, and that the purpose of demand is to start interest to running; that interest on county warrants is governed by the general statute concerning interest, and the statutes concerning county warrants being silent about interest thereon, the right of the holder of warrants to interest is the same as if the county were a private citizen.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds,* Judge.

REVERSED AND REMANDED (*with directions*).

*Thos. W. Martin* and *Edwin L. Moore* for appellant.

(1) It was originally a question whether county warrants ever drew interest or not. And the authorities are not now unanimous that they do. 1 Dillon's Mun. Corp. (4 Ed.), sec. 506; 4 Am. and Eng. Ency. Law (1 Ed.), 362. (2) But it was early ruled in Missouri that they do draw interest, but only after presentation for payment and failure to pay for lack of funds (and even then the claim for interest must be presented to the county court for allowance, which point was sought to be made in defendant's original answer in this case, as will be seen by reference to the record.) Robbins v. Lincoln County Court, 3 Mo. 57; Skinner v. Platte County, 22 Mo. 438; State ex rel. v. Trustees, 61 Mo. 158. (3) But in drawing interest at all, county warrants do so upon the theory that they have been presented for payment and payment refused, just as an ordinary debt will draw interest under such circumstances. But this presupposes that the man who makes

the demand has the right to receive payment; otherwise his demand is a nullity, and would create no right against the county. It should receive no attention by the treasurer, because a man to whom a county warrant is assigned in blank has no right to receive payment on it. R. S. 1899, secs. 6798 and 6799; Bank v. Franklin County, 65 Mo. 110; Craig v. Mason, 64 Mo. App. 347. (4) It will not do to say that, since the treasurer has seen fit to recognize a blank indorsee's demand for payment and to protest the warrant on its back, the county should be bound by that protest and be liable for interest thereafter. In the first place this would be creating a right by the treasurer's violation of the law under section 6808. And in the next place, nobody would have any right to be misled by that protest into believing that the paper was drawing interest, for county warrants are not negotiable, and everybody is bound to know the law relating to them and the equities going with them. R. S. 1899, sec. 6799; Sears v. Stone County, 105 Mo. 236; 1 Dillon's Mun. Corp., sec. 503; 4 Am. and Eng. Ency. Law (1 Ed.), 363.

*Thurman, Wray & Timmonds* for respondent.

(1) County warrants, like all written evidences of debt, bear six per cent interest after demand for payment. R. S. 1899, sec. 3705. The Supreme Court, as early as 1831, held that the foregoing section of our statute applied to county warrants. Robbins v. Lincoln County, 3 Mo. 57. (2) Statutes ought to be construed in the light of reason and common sense. "It is the recognized law in this State that the letter of the statute may be enlarged or restrained according to the true intent of the framers of the law. In such cases, the reason of the law prevails over the letter." Ex parte Marmaduke, 91 Mo. 254; Andrew County v. Schell, 135 Mo. 42. It is apparent that the first clause of section 6798 is intended to avoid payment of warrants to persons who may have become possessed of

them without right, in which event the county would be compelled to pay a second time. This is the object and purpose of the section, but we insist it does not mean that the person to whom it is drawn, or the assignee, is required to present the warrant in person; in other words, the statute never intended that the owner of a warrant could not collect it by agent or attorney, or present it for collection by agent or attorney or by any other person that he might authorize to receive it. (3) Counsel for appellant says that because Isenhour was the equitable owner of the warrants, such fact raises a presumption that he had no authority from the legal owner to present them for protest. The very converse is true; it is a matter of common knowledge that warrants are not sold in country towns when the money is in the treasury with which to pay them. The purchaser invariably buys as an investment. The first thing a purchaser would say, when about to purchase a warrant, is, ''This warrant has not been presented for payment, therefore does not draw interest.'' The seller replies, ''I will go and have it protested,'' or, ''You go and have it protested.'' This of itself would be ample authority for the purchaser of the warrant to act for the legal owner in presenting the warrant for payment and protest, on appellant's view of the law.

BURGESS, J.—This is an action upon ninety-five warrants issued by the county of Barton to different persons, and sold and delivered to the plaintiff.

The petition was filed on the 5th day of April, 1902, and contained a separate count upon each warrant. In its answer defendant offered to let judgment go for principal and interest upon all counts except the 10, 12, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 42. As to these, defendant offered to let plaintiff take judgment on each of them for the amount of the principal of the warrants, but denied defendant's liability for any in-

terest thereon. The court, however, rendered judgment upon all the warrants, including interest from the time of their presentation and demand of the county treasurer of payment of the warrants; so that the only question for this court to determine on this appeal, under the facts, is as to whether the trial court erred in rendering judgment against the county for the interest of the warrants sued on in the counts numbered as before stated.

As the same questions are involved with respect to all the warrants mentioned in these counts of the petition, any one of them may be taken as an illustration. We will, therefore, take the warrant sued upon in the 12th count, which is numbered 1,699. It was issued to Lee Livingston by the county court of said county on February 8, 1898. This warrant was presented to the county treasurer for payment, as shown by his warrant register and his indorsement on the back of the warrant, on the 11th day of February, 1898, by the plaintiff, Simeon Isenhour, and was by the treasurer protested for the want of funds with which to pay it. When this warrant was presented to the treasurer by Isenhour there were two blank printed assignments (so called for convenience) on the back of it, the first of which was signed by Livingston, the payee, as follows:

"For value received ............... assign the within warrant to .............. this ........ day of .........., 1......
"LEE LIVINGSTON."

After the institution of this suit and after the warrant was presented to the treasurer by Isenhour, on the 11th day of February, 1898, for payment, this blank form was filled out by the payee Livingston so as to read, at the time of trial, as follows:

"For value received I assign the within warrant to Simeon Isenhour, this 11th day of February, 1898.
"LEE LIVINGSTON."

Plaintiff's contention is that the warrant drew interest from the date of its presentation and demand of payment, on the 11th day of February, 1898. Defendant contends that under sections 6798 and 6799, Revised Statutes 1899, the warrant never commenced to draw interest, because it was never presented for payment by the payee, or by any other person to whom it had been assigned by him, in accordance with the requirement of the statute; in other words, it had never been presented for payment by any person who had the right to demand and receive payment. No question is raised respecting the pleadings.

The warrant now under consideration, and which was introduced in evidence by plaintiff, is as follows:

"State of Missouri.

"$172.40.                                             No. 1699.

"The Treasurer of the county of Barton.

"Pay to Lee Livingston one hundred and seventy-two and forty one-hundredths dollars out of any money in the treasury belonging to the County Revenue Fund. Given at the courthouse in Lamar, Mo., this 8th day of February, A. D., 1898.

"By order of the County Court.

"Wm. P. Scott, President.

"Attest: Chas. H. Smith, Clerk.

"By Geo. Rumsey, Deputy."

The indorsements on the back of said warrant at the time of trial were as follows:

"The within warrant presented for payment, and no money in the treasury for that purpose, this 11th day of February, 1898.

"Douglass Inglish, County Treasurer."

"For value received I assign the within warrant to Simeon Isenhour, this 11th day of February, 1898.

"Lee Livingston.

"For value received .......... assign the within warrant to ................. this .......... day of ............, 1......."

Upon these facts the court rendered judgment on the 12th count in the petition, being on warrant numbered 1,699, in favor of plaintiff and against the defendant, for the sum of $216.51, which included interest from the date of presentation at the rate of six per cent per annum. There was embraced in the same judgment, as shown by the record, the same kind of judgment respecting all the other warrants described in the petition; that is, judgment was rendered in favor · of the plaintiff for the amount of all the warrants, with interest at six per cent per annum, from the time of their presentation for payment up to the time of rendition of the judgment.

The only error complained of is as to the action of the trial court in allowing interest upon said contested warrants, which had been sold and assigned to plaintiff by blank indorsements.

In support of its contention defendant relies on sections 6798, 6799 and 6808, Revised Statutes 1899, which read as follows:

"Sec. 6798. No county treasurer in this State shall pay any warrant drawn on him unless such warrant be presented for payment by the person in whose favor it is drawn, or by his assignee, executor or administrator; and when presented for payment, if there be no money in the treasury for that purpose, the treasurer shall so certify on the back of the warrant, and shall date and subscribe the same.

"Sec. 6799. All warrants drawn on the treasurer of any county shall be assignable, and every assignment of any such warrant shall be in the following form: For value received, I assign the within warrant to A B, this ........ day of ............, 19..... (Signed) C D. No blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same."

"Sec. 6808. Any county treasurer violating any provisions of this article shall be deemed guilty of a

misdemeanor, and shall, on conviction, be punished,''
etc.

Plaintiff, in support of the judgment of the court,
relies on section 6771, Revised Statutes 1899, which is
as follows:

''Sec. 6771. He shall procure and keep a well-
bound book, in which he shall make an entry of all
warrants presented to him for payment, which shall
have been legally drawn for money by the county court
. . . stating correctly the date, amount, number, in
whose favor drawn, by whom presented, and the date
the same was presented; and all warrants so presented
shall be paid out of the funds mentioned in such war-
rants, and in the order in which they shall be presented
for payment.''

County warrants are creatures of the statute, and
can only be issued in accordance therewith, but when no
rate of interest is prescribed upon their face, they bear
interest at the rate of six per cent per annum, as pro-
vided by section 3705, Revised Statutes 1899, after pre-
sentation to the treasurer of the county by which issued,
and failure to pay because of there being no money in
the treasury for their payment. [Robbins v. Lincoln
County Court, 3 Mo. 57; Skinner v. Platte County, 22
Mo. 438; State ex rel. v. Trustees, 61 Mo. 155.] Such
warrants are merely evidences of indebtedness, non-
negotiable, and the Legislature had the power and
authority to prescribe their form, by whom they should
be signed and attested, prohibit their payment by the
county treasurer of the county issuing them, unless pre-
sented for payment by the person in whose favor drawn
or by his assignee, executor or administrator, as well
as also to provide that when any such warrant be pre-
sented for payment, if there be no money in the treas-
ury for the purpose, the treasurer shall so certify on
the back of the warrant, and shall date and subscribe
the same. It also had the power and authority to pro-
vide that such warrants should be assignable, to pre-

scribe the form thereof, and to provide that ''no blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same.''   All of these things the Legislature did, as is shown by sections 6797, 6798 and 6799, Revised Statutes 1899, and upon the theory that these statutory provisions are valid, and the act of the Legislature with respect to said warrants exclusive, defendant asked the court, sitting as a jury, to declare the law to be as follows:

''The court declares the law to be that, if the court finds from the evidence that the warrants in question were not presented to the treasurer of the county for payment by the original payee therein, but that they were sold, transferred and delivered by such payees to plaintiff by blank assignment, that is, by writing their names on the back of such warrants, but not filling in the name of the plaintiff or the dates of such transfers, and were then in that condition produced by the plaintiff to the treasurer for payment, then such warrants did not commence to draw interest, and the finding will be for the defendant upon the issue involved.''

This declaration of law was refused, which defendant insists was error.

That a county warrant only draws interest from the time of its presentation to the county treasurer for payment by the person in whose favor it is drawn, or by his assignee, executor or administrator, agent or clerk, and payment refused because of there being no money in the treasury with which to pay it, is too clear for argument; but in the case at bar the plaintiff Isenhour presented the warrant and demanded its payment in person, when, although the equitable holder of the warrant, he was not its assignee, as the assignment was in blank, and the legal title to the warrant was still in the payee, Lee Livingston.   Under such circumstances, plaintiff had no legal title to the warrant or authority to even fill the blank, by inserting his name therein, because the statute, section 6799, expressly pro-

vides that "no blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same."

The indorsement on the back of the warrant by the county treasurer, as follows: "The within warrant presented for payment, and no money in the treasury for that purpose, this 11th day of February, 1898," was in express violation of the statute, and void, and for which he was guilty of a misdemeanor and liable, on conviction, to be punished according to law, and to be removed from office.    [Sec. 6808, R. S. 1899.]    This could not, therefore, in the remotest degree affect in any way the rights of the parties to this action.

Plaintiff contends that it is apparent that the first clause of section 6798 is intended to avoid payment of warrants to persons who may have become possessed of them without right, in which event the county would be compelled to pay a second time; to which we may be permitted to add: and to prevent county officials from receiving in payment of the revenues due the counties such warrants at their face value, holding them, and thereafter turning them over to the counties upon their settlements therewith of such revenues, with the accumulated interest thereon, which could not well be done in case the warrants be presented by the payee, his legal representative, or assignee.  We do not see that section 6771, Revised Statutes 1899, which provides that the treasurer shall keep a book "in which he shall make an entry of all warrants presented to him for payment, which shall have been legally drawn . . . stating correctly the date, amount, number, in whose favor drawn, by whom presented, and the date the same was presented; and that all warrants so presented shall be paid out of the funds mentioned in such warrants, and in the order in which they shall be presented for payment," is in any way out of harmony with what we have said.

With respect to the contention of plaintiff that there was no evidence that he was not authorized by the legal owner of the warrant to present it for payment, and in the absence of such evidence the presumption prevails that he was authorized to present it for such purpose, or the treasurer would not have protested it, as the law presumes the treasurer did his duty, we are unable to agree, for the following reasons:

In the first place, the treasurer violated his duty in recognizing the warrant under the circumstances, and indorsing upon it "presented for payment, and no money in the treasury for that purpose."

In the second place, as plaintiff was in possession of the warrant at the time, and in person presented it for payment, it will be presumed that he was its owner and acting for himself and not for some other person; besides, he is prosecuting this suit as owner, which fact would seem to be inconsistent with the idea or presumption that another person was the owner and he was acting for him.

The statute with respect to the county warrant under consideration is in all of its material provisions as much part thereof as if it were written or printed upon the face of it, and is as binding upon the payee therein and the plaintiff, as its holder, as if they had expressly agreed to all of its provisions. [State to use of Wolff v. Berning, 74 Mo. 87; Wanschaff v. Benefit Society, 41 Mo. App. 206; Reed v. Painter, 129 Mo. 674.] And as a condition to plaintiff's recovery of interest upon such warrant, and the others in contest, it devolves upon him to show that he had complied with the terms of the statute in regard thereto. This is an action at law, as distinguished from one in equity, and is, of course, governed by the law in such cases.

Our conclusion is that the judgment should be reversed and the cause remanded, with directions to the trial court to enter up judgment in favor of plaintiff for the amount of the face of the warrants only. *Gantt,*

*Valliant* and *Lamm, JJ.,* concur: *Brace, C. J., Marshall* and *Fox, JJ.,* dissent.

### DISSENTING OPINION.

MARSHALL, J.—This is an action to recover on ninety-five county warrants, jury scrips, etc., issued by the defendant county. The petition contains ninety-five counts, one for each of the demands sued for. Demand and protest for non-payment is alleged on February 11th, 1898, and interest, at six per cent, is asked from that date. An assignment is also alleged of said demands to the plaintiff. The answer consents to judgment, for plaintiff, as prayed, upon all the counts except the 10, 12, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 42, and as to these the defendant consents to judgment for the principal of the demands, but denies that it is liable for interest thereon. During the trial the parties admitted that the warrants sued upon in said counts were all presented by the plaintiff to the county treasurer, at the date alleged, for payment; that at said time said warrants were endorsed in blank by the original payees, and had been by the payees previously sold to the plaintiff, but the name of the plaintiff as assignee was not written in the blank assignment, which was in the form prescribed by the statute and printed on the back of the warrant, nor was the date of the assignment filled in the space left therefor; that after the institution of this suit, the original payees wrote in the blank spaces in said printed assignments, the plaintiff's name, as the assignee, and the 11th of February, 1898, as the date of the assignment. It was also shown by the evidence that such warrants were presented by the plaintiff to the county treasurer, on the 11th of February, 1898, and the treasurer indorsed on each, "within warrant presented for payment, and no money in treasury for that purpose, this 11th day of February, 1898."

The circuit court entered judgment for the plaintiff for the principal of each of said demands, with six per cent interest thereon, from the 11th day of February, 1898. From this judgment the defendant appealed.

## I.

The only error assigned is the action of the trial court in allowing interest upon the warrants that had been assigned to plaintiff by blank indorsements.

In support of its contention defendant invokes sections 6798, 6799 and 6808, Revised Statutes 1899, which provide, respectively, as follows:

"Sec. 6798. No county treasurer in this State shall pay any warrant drawn on him unless such warrant be presented for payment by the person in whose favor it is drawn, or by his assignee, executor or administrator; and when presented for payment, if there be no money in the treasury for that purpose, the treasurer shall so certify on the back of the warrant, and shall date and subscribe the same.

"Sec. 6799. All warrants drawn on the treasurer of any county shall be assignable, and every assignment of any such warrant shall be in the following form: for value received, I assign the within warrant to A B, this —— day of ——— 19——. (Signed) C D. No blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same."

"Sec. 6808. Any county treasurer violating any provisions of this article shall be deemed guilty of a misdemeanor, and shall, on conviction, be punished," etc.

The plaintiff supplements these references by section 6771, Revised Statutes 1899, which is as follows: "The treasurer shall keep a well-bound book in which he shall make an entry of all warrants presented to him for payment . . . stating correctly the date, amount,

number, in whose favor drawn, by whom presented, and the date the same was presented; and all warrants so presented shall be paid out of the funds mentioned in such warrants, and in the order in which they shall be presented for payment.''

It is conceded by the parties that the rule has been, in this State, since 1831, that county warrants bear interest from the date of their presentment for payment and refusal to pay because of no money applicable thereto. [Robbins v. Co. Court, 3 Mo. 57; Skinner v. Platte Co., 22 Mo. 438; State ex rel. v. Trustees, 61 Mo. 158.]

The defendant contends that as a blank indorsement does not transfer any right to a warrant under the statute, and as the indorsement of these warrants was in blank when they were presented for payment, and as they were presented by the plaintiff and not by the original payees, therefore, there was no such presentment as would have authorized the treasurer to pay them, and hence, the transfer and presentation being void, no interest can be recovered on such warrants. Counsel for defendant admit that warrants need not be presented for payment by the original payee in person, but may be presented by a clerk, agent, or attorney of the payee, and this is also clearly contemplated by section 6771, Revised Statutes 1899, which requires the treasurer to note ''by whom presented.''

In other words, defendant claims that the presentation of these warrants to the treasurer by the plaintiff, did not enure to his benefit, and could not start the running of interest in either his favor or that of the original payee—not in his favor, because, the indorsement being in blank, it conferred no right in him to the warrant or to demand payment thereof in his own favor, and not in favor of the original payee, because no presentation in his favor by the plaintiff was made or authorized to be made.

Whatever the purpose of the lawmakers may have

been in enacting the provisions of the law quoted, it is clear that they did not have in mind any regulation as to interest upon such warrants. Such warrants are evidences of county indebtedness, and bear interest at the rate of six per cent from demand of payment, under the general statute, section 3705, Revised Statutes 1899. Under this statute a demand may be made by the owner of the debt, whether he be the original creditor, or his assignee, or legal representative, or the agent of any of them as such owner. And there is no difference as to county warrants.

There was, concededly, a demand made upon the treasurer, for the payment of these warrants on the 11th day of February, 1898. That demand was made by the plaintiff. The blank indorsement was insufficient to vest a legal title to the warrants in the plaintiff. Therefore the legal title was then in the original payees.

But although the legal title was in the original payees, it was a mere naked legal title, for the plaintiff had paid his money to the original payees for the warrants, and therefore was the owner thereof in equity, and could have maintained a suit in equity to compel the original payees to transfer the legal title to him. [Craig v. Mason, 64 Mo. App. l. c. 347.] In making the demand, therefore, the plaintiff was not a mere volunteer or intermeddler.

It has already been pointed out that the statutes relating to county warrants make no provision whatever for the payment of interest thereon, but that this court has held that they do bear interest and that the general statute in reference to interest is as applicable to such warrants or the debts they evidence, as to any other character of debts. The Legislature evidently intended that such should be the case, and the failure to provide specially for interest was not a mere *casus omissus.* For ever since 1865 there has been a pro-

vision upon the statutes of this State in reference to city warrants, similar to the provisions herein set out as to county warrants and the protesting of the same when there was no money to pay them, except that it was further provided that such warrants so protested should draw legal interest until funds for the payment thereof should be set apart therefor. [Revised Statutes 1865, ch. 42, sec. 11; Wagner's Stats. 1872, p. 1325, sec. 11; Revised Statutes 1879, p. 1002, sec. 5072; Revised Statutes 1889, p. 514, sec. 1931; Revised Statutes 1899, p. 1441, sec. 6157.]

It is obvious, therefore, that the Legislature intended that the general statute in reference to interest should govern such cases. The statute in referring to interest (sec. 3705, R. S. 1899) provides that in the absence of an agreement between the parties, interest shall begin to run after the debt becomes due and demand shall have been made. But the statute contains no provision or regulation as to the demand. Hence the general rules of the common law as to demand apply, for the common law is the law in this State except so far as it has been modified by statute. [Sec. 4151, R. S. 1899.]

The general rule of the common law is that a demand must be made by the party to be benefited thereby or by his duly authorized agent. [9 Am. and Eng. Ency. Law (2 Ed.), 213; 16 Ibid, 1022.]

To this general rule there are well-recognized exceptions, for instance, if the demand is made by a third person, the debtor has a right to require reasonable evidence of the authority to make it, and if he fails to do so at the time the demand is made he cannot be heard afterwards to defend on the ground that such person had no authority to make the demand. [Ibid, 213.] Or if the refusal to pay is based upon some other ground than the right of the person making the demand to do so, he cannot be heard afterwards to defend upon such want of authority. [Spence v. Mitchell, 9

Ala. 744; Connah v. Hale, 23 Wend. 462; West v. Tupper, 1 Bailey L. (S. C.) 193; Railroad v. Jewett, 16 Ind. 274; Robertson v. Crane, 27 Miss. 362; Thompson v. Rose, 16 Conn. 71; Baxter v. McKinlay, 16 Cal. 76; Payne v. Smith, 12 N. H. 34; Grafton v. Follansbee, 16 N. H. 450.] Or if the debtor acknowledges in writing that a demand has been made upon him, he cannot afterwards object that the person making the demand had no authority to do so. [Levistones v. Marigny, 13 La. Ann. 353; Barnard v. Bartholomew, 22 Pick. (Mass.) 291.]

The main object of a demand is to give the debtor an opportunity to pay the debt and thereby save the costs of a suit that might be brought against him or to save the payment of interest. The debtor can refuse to pay to one who is not the original creditor or who is not authorized by the creditor to make demand therefor, but he must put his refusal upon that ground, because if he does, the defective demand could then be remedied at once or the authority be shown to act for the creditor.

These principles of law apply as well to county warrants as to debts due by one citizen to another, for the Legislature has not seen fit to make any other rule, but has left the matter subject to the general law, and it is plain that they so intended, for they expressly changed the law as to the blank assignment of such warrants, and did not change it in any other respect, and hence, upon the principle of *"Expressio unius, est exclusio alterius,"* it follows that they did not intend to change the law in any other respect, and, therefore, the courts have no power to do so by construction.

But aside from this, the demand in this case was good at common law. It was good as to the plaintiff, because he was the equitable owner of the warrants, and therefore had a right to make the demand. When he paid his money to the payees for the warrants he had a right to use their names both for the purpose

of making a demand and of bringing suit to recover the debt. At common law a suit upon an assigned chose in action ran in the name of the assignor to the use of the assignee. In other words, as choses in action were not assignable at common law, only the person who had the legal right was originally entitled to sue and the person who had only an equitable right could not do so. [Enc. Pl. and Pr., col. 15, p. 484.] This rule did not obtain in equity, however. Therefore, "At an early day courts of law began to recognize the equitable rights of assignees and others; and to obviate the injustice to them resulting from a rule that only the person having the legal title can sue, the practice obtained by allowing the person equitably entitled to sue in the name of the person legally entitled. In such cases the person in whose name the suit is brought is called the record, nominal, or legal plaintiff, and the person for whose benefit the action is prosecuted is called the equitable, beneficial, or use plaintiff." [15 Enc. Pl. and Pr., p. 487.] And this rule obtains in sister States. [Skinner v. Somes, 14 Mass. 107; Taylor v. Reese, 44 Miss. 93; Page v. Thompson, 43 N. H. 373; Caldwell v. Hartupee, 70 Pa. St. 74.]

At common law the court dealt only with the record plaintiff, who was liable for costs and who alone could appeal, and if he died the suit abated, and the death of the use plaintiff had no effect upon the action, nor was his interest deemed necessary to be shown, it being held sufficient to show a right to recover in the record plaintiff. [15 Enc. Pl. and Pr., pp. 488-489.] But the modern doctrine is that the use plaintiff controls the litigation and the record plaintiff cannot interfere, or dismiss the suit, or release the cause of action, or receive satisfaction of the judgment. [Ibid, pp. 491-492.]

"Whenever it is necessary to the assertion of the rights of the real party in interest, he may bring suit for his own benefit in the name of the person having the

legal title and right to sue. And he may do this even without the latter's authority and against his consent, upon indemnifying him against costs. It is well established that an assignee may sue in the name of his assignor, it being held that the assignor, by the fact of the assignment, authorizes the assignee to use his name in any legal proceedings that may become necessary to give full effect to the assignment.'' [15 Enc. Pl. and Pr., p. 493 et seq., and cas. cit.]

These principles have also received the approval of this court. [Chauvin v Labarge, 1 Mo. 557; Thomas v. Cox, 6 Mo. 506; Wooden v. Butler, 10 Mo. 716; Alexander v. Schreiber, 13 Mo. 271.]

The inevitable and logical consequence flowing from these rules is that the assignee of an unassignable chose in action or of an imperfectly executed assignment of a chose in action, has a right to use the assignor's name in any steps that may be necessary to give full effect to the assignment. One of such steps is to demand and receive payment in the name of the assignor. Another step is to make a demand so as to start the running of the interest.

The abstract of the record in this case shows that it was admitted, in open court, during the progress of the trial, that the warrants were presented for payment by the plaintiff and further shows that they were indorsed by the county treasurer, ''Within warrant presented for payment, and no money in treasury for that purpose.'' It does not appear whether the plaintiff demanded payment in his own name and right or in the name of the original payee. But no objection was made at the time to the authority of the plaintiff to make demand. On the contrary, it appears affirmatively that the demand was admitted, and that payment was refused solely on the ground that there was no money in the treasury to pay them.

There can be no doubt that if the defendant was a private citizen he could not be heard now to say that

no sufficient or legal demand had been made. And as hereinbefore shown the Legislature has left counties to be governed by all the rules of law that apply to private persons, except as to blank assignments of warrants.

The provision of the statute in this respect places blank assignments of warrants in exactly the same position that choses in action were at common law, that is, prohibits such assignments. It has been above pointed out that even according to the original, strict common law, an assignee of a chose in action had a right to use the name of the assignor for all the purposes that were necessary to fully carry the assignment into effect. This being true, a county warrant that has been assigned in blank stands upon the same footing and is governed by the same rules.

The result is, that the defendant here cannot be heard to now say that no sufficient or legal demand was made upon it, and that the interest began to run from the date the warrants were protested for nonpayment.

For these reasons I think the judgment of the circuit court should be affirmed, and, therefore, dissent from the opinion of the majority in this case.

*Brace, C. J.,* and *Fox, J.,* concur in what is here said.

REVERSED AND REMANDED (*with directions*).